**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

EDWARD POTRZEBA III, KAYLEIGH ROOD,
MARTIN FURNER, and JOSIE PARKER,

                              Plaintiffs,

                                                              3:23-cv-191 (BKS/ML)

v.

SHERBURNE-EARLVILLE HIGH SCHOOL through the
Sherburne-Earlville Central School District Board of
Education, KENNETH BUEHNER, in his individual and
official capacity, NICHOLAS COLOSI, in his individual
and official capacity, BRAD PERRY, in his individual and
official capacity, ROBERT BERSON, in his individual and
official capacity, DOE DEFENDANTS 1–20, in their
individual and official capacity,

                              Defendants.

---

**Appearances:**

*For Plaintiffs:*
Keith Altman
The Law Office of Keith Altman
33228 West 12 Mile Road, Suite 375
Farmington Hills, Michigan 48334

*For Defendants:*
Frank W. Miller
Giancarlo Facciponte
Hancock Estabrook, LLP
1800 AXA Tower I
100 Madison Street
Syracuse, New York 13202

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I.      INTRODUCTION

        Plaintiffs Edward Potrzeba III, Kayleigh Rood, Martin Furner, and Josie Parker bring this

action under 42 U.S.C. § 1983 and New York State law alleging (1) retaliation in violation of

their First Amendment rights; (2) violation of due process under the Fourteenth Amendment; and (3) negligent infliction of emotional distress. (Dkt. No. 1.) Plaintiffs name as Defendants Sherburne-Earlville High School through the Sherburne-Earlville Central School District Board of Education, and the following school employees in their individual and official capacities: Kenneth Buehner, Nicholas Colosi, Brad Perry, Robert Berson, and twenty Doe Defendants. (*Id.* at 1.) The named Defendants answered the complaint, (Dkt. No. 9), and have moved to dismiss the complaint under Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. No. 14.) The motion is fully briefed. (Dkt. Nos. 19, 20.) For the reasons that follow, the Court grants the motion in part.

## II.   FACTS[1]

Defendant Sherburne-Earlville High School is a public high school located in Sherburne, New York, and operated by the Sherburne-Earlville Central School Board of Education. (Dkt. No. 1, ¶ 11.) Defendants Buehner, Colosi, Perry, and Berson were employed by Sherburne-Earlville High School at all times relevant to this action.[2] (*Id.* ¶¶ 12–15.) Plaintiffs were students at Sherburne-Earlville High School at all times relevant to this action. (*Id.* ¶ 17.)

### A.   Plaintiffs Potrzeba, Rood, and Furner

During the morning of Friday, November 19, 2021, Plaintiffs Potrzeba, Rood, and Furner met with Defendants Buehner and Berson "regarding issues within Defendant Sherburne-Earlville High School including the mistreatment by the principal." (*Id.* ¶ 18.) Defendants Buehner and Berson "canceled the meeting," "kicked Plaintiffs out of the main office and denied rescheduling the meeting." (*Id.* ¶ 19.) The same day, at approximately 11:45 a.m., Plaintiffs

---

[1] These facts are drawn from the complaint. (Dkt. No. 1.) The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations, *see Lynch v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020), but does not accept as true the legal conclusions, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] The complaint states these Defendants were school employees but does not identify their positions.

Potrzeba, Rood, and Furner "participated in a peaceful protest of Sherburne[-Earlville High School] students against mistreatment by the High School's principal." (*Id.* ¶ 20.) The protest consisted of "a quiet 'walkout' which did not interfere with the school's operation."[3] (*Id.* ¶ 21.) Plaintiffs Potrzeba, Rood, and Furner participated in the protest with the consent of their parents. (*Id.* ¶ 22.)

The Sherburne-Earlville Central School District's Code of Conduct "sets out that 'leaving school grounds during regular school hours' is not a violation of the school's rules if done [with] the permission of a parent." (*Id.* ¶ 30.) The Code of Conduct also provides that "every student is entitled to being informed of the misconduct they are alleged to have committed, as well as being given an opportunity to present their version of facts about the alleged misconduct." (*Id.* ¶ 31.) Plaintiffs Potrzeba, Rood, and Furner "were not awarded these procedures." (*Id.* ¶ 32.)

On Monday, November 22, 2021, Plaintiffs Potrzeba, Rood, and Furner "were called into the main office by . . . the high school secretary[] via loudspeaker with other students who had participated in the protest." (*Id.* ¶ 23.) In the main office, "Defendant Buehner informed the students that they would receive a day of In-School Suspension ('ISS') for 'what happened last week'" and were expected to immediately report for ISS. (*Id.* ¶¶ 24, 26.) "The students were not informed of the actual charges brought against them and were left to assume that this was done in retaliation for their protest." (*Id.* ¶ 25.) "Other Sherburne students participated in the walk-out with no discipline and repercussions." (*Id.* ¶ 47.) Plaintiff Potrzeba "feared that his constitutional rights would be violated if he remained at school for questioning and therefore left the school's premises." (*Id.* ¶ 27.)

---

[3] There is no allegation in the complaint that Plaintiff Parker participated or had any involvement with the "walkout."

On November 26, 2021, Plaintiff Potrzeba's parents were informed of the ISS via a notice that described the alleged offenses as "cutting class, disruption of the school environment, and leaving school grounds without permission" but which did not include the duration of the ISS. (*Id.* ¶¶ 28–29.) Plaintiff Potrzeba "was not given the opportunity to have an informal conference with the principal and complaining witness, nor was he afforded the right to an appeal to the superintendent and an appeal to the school board." (*Id.* ¶ 33.) "Because of this, [Plaintiff Potrzeba]'s parents informed Sherburne[-Earlville High School] that they would pull Plaintiff [Potrzeba] from the school for a day as to not serve ISS until the right to an appeal would be granted." (*Id.* ¶ 34.) "Defendant Colosi subsequently threatened [Plaintiff Potrzeba], stating that for every day that he did not attend ISS, he would receive an additional day of ISS." (*Id.* ¶ 35.)

Plaintiff Rood's parents "attended an informal conference with Defendant Perry in which he continuously told them he could not speak for Defendant Colosi, who was not present." (*Id.* ¶ 36.) Plaintiff Rood's parents "had requested and were denied a meeting with Defendant Buehner, who had written the referral for sanction." (*Id.* ¶ 37.) On or around December 13, 2021, Plaintiff Furner's parents "were denied their request to have Defendant Buehner present during their meeting with Defendant Perry." (*Id.* ¶ 38.)

Plaintiffs Potrzeba, Rood, and Furner "continued to refuse to attend ISS without [being] given the right to appeal" and "were threatened with additional ISS as a consequence for seeking an appeal." (*Id.* ¶¶ 39–40.) On or around January 24, 2022, Plaintiff Rood "stated that she wanted to appeal the decision of ISS and was told that she was wasting her time by Sherburne[-Earlville High School] staff." (*Id.* ¶ 41.) Plaintiff Furner also "provided to Sherburne [Earlville High School] staff that he wanted to appeal the decision of ISS and was met with the same

advisement; he was wasting his time." (*Id.* ¶ 42.) "Defendant Colosi informed [Plaintiff Potrzeba]'s parents that they would not be granted an informal conference because now the 'time expired.'" (*Id.* ¶ 43.) "Only after [Plaintiff Potrzeba]'s parents involved the school's General Counsel, Defendant Colosi retracted his threats and granted [Plaintiff Potrzeba] an appeal process." (*Id.* ¶ 44.) On February 28, 2022, a hearing regarding the appeal to the Board of Education took place. (*Id.* ¶ 45.) The Board of Education denied Plaintiffs Potrzeba, Rood, and Furner's appeals. (*Id.* ¶ 46.)

### B.  Plaintiff Parker

The allegations involving Plaintiff Parker arise from circumstances entirely separate from the circumstances of Plaintiffs Potrzeba, Rood, and Furner. On April 23, 2022, Plaintiff Parker "was issued a 5-day(s) suspension for a tobacco violation." (*Id.* ¶ 49.) "Defendant's policy states 'Any weapons, alcohol, or illegal substances found shall be confiscated immediately followed by notification of the parent of the students involved and the appropriate disciplinary action taken, up to and including permanent suspension and referral for prosecution.'" (*Id.* ¶ 50.) Plaintiff Parker "was never found to be in possession of the alleged vape, as such no confiscation occurred." (*Id.* ¶ 51.)

During the morning of Monday, April 25, 2022, Plaintiff Parker "reported to school and was asked to leave by the School Resource Officer." (*Id.* ¶ 52.) "An informal meeting was hel[d] between Defendant Colosi and [Plaintiff] Parker's parents" and, that same day, "an appeal regarding Josie's suspension was made." (*Id.* ¶ 54.) "[T]he district held [Plaintiff Parker]'s suspension in abeyance pending the conclusion of the appeal." (*Id.*)

On April 26, 2022, Plaintiff Parker "was notified that an additional suspension from athletic contests would be put in place and would remove [Plaintiff Parker] from four consecutive games beginning April 25, 2022." (*Id.* ¶ 55.) Plaintiff Parker "would be allowed to

attend all practices with the team once her out of school suspension was served" but "participation in [] regular practices w[ould] be at the coaches' discretion." (*Id.* ¶ 56.) Plaintiff Parker appealed to the "Athletic Board of Review." (*Id.* ¶ 57.) Plaintiff Parker, "a scholar athlete," was forced to miss multiple games her senior year." (*Id.* ¶ 58.)

## III.     STANDARD OF REVIEW

Under Rule 12(c) of the Federal Rules of Civil Procedure, any party may request judgment on the pleadings "after the pleadings are closed—but early enough not to delay trial." The standard for granting a Rule 12(c) motion to dismiss for failure to state a claim "is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim." *See Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021) (quoting *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020)). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2, 2017 U.S. Dist. LEXIS 155140, at *5 (S.D.N.Y. Sept. 22, 2017) (quoting *Twombly*, 550 U.S. at 555). A court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

6

"[C]onsideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of

the complaint itself," *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006), and "documents

attached to the complaint as exhibits," *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d

Cir. 2010). "The standard applicable to documents a court may consider in ruling on a motion for

judgment on the pleadings under Rule 12(c) is slightly broader, allowing consideration not only

of the nonmoving party's pleading, but also that of the moving party." *LiveIntent, Inc. v. Naples*,

293 F. Supp. 3d 433, 441 (S.D.N.Y. 2018). Accordingly, for the purpose of ruling on

Defendants' motion to dismiss, the Court has not considered factual statements made by either

Defendants or Plaintiffs in their motion papers.

## IV.   ANALYSIS

### A.   Section 1983 Causes of Action

As an initial matter, the Court addresses, with respect to Plaintiff Parker's First

Amendment retaliation and Fourteenth Amendment due process claims, Defendants' argument

that Plaintiff Parker has not plausibly alleged the personal involvement of any individual

Defendant. (Dkt. No. 14-1, at 25–27.) In opposition, Plaintiffs fail to separate the analysis of

Plaintiffs Potrzeba, Rood, and Furner's claims, which stem from the November 2021 "walkout,"

and Plaintiff Parker's claims, which stem from her April 2022 suspension for allegedly

possessing tobacco or a vape, and appear to refer only to conduct involving Plaintiffs Potrzeba,

Rood, and Furner.[4] (Dkt. No. 19, at 14 ("As a result of Plaintiff's [sic] walk out and their

disagreement with the policies that were in place at the school, Defendants disciplined Plaintiffs,

denied them due process and limited their educational environment.").)

---

[4] Plaintiffs also fail to cite any caselaw in support of their position.

It is well-settled that "the 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (quoting *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006)). That is, to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show "the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (citations omitted). To do so, a plaintiff must allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

Here, the complaint contains no allegations that suggest Defendants Buehner, Perry, or Berson engaged in any conduct involving Plaintiff Parker. The only allegation of any Defendant's conduct involving Plaintiff Parker is that "[a]n informal meeting was hel[d] between Defendant Colosi and Josie Parker's parents." (Dkt. No. 1, ¶ 53.) Plaintiffs allege no tangible connection between this meeting and alleged injuries suffered by Plaintiff Parker. *See Norton v. Town of Islip*, 97 F. Supp. 3d 241, 256–57 (E.D.N.Y. 2015) (granting a motion to dismiss a First Amendment retaliation claim against a defendant for lack of personal involvement where the only allegations involving the defendant were his presence at a meeting related to alleged adverse action and his awareness of the plaintiff's alleged participation in protected activity); *Robie v. Obst*, No. 14-cv-57S, 2015 WL 4208639, at *7, 2015 U.S. Dist. LEXIS 89991, at *16 (W.D.N.Y. July 9, 2015) (granting a motion to dismiss a Fourteenth Amendment due process claim against defendants for lack of personal involvement where the defendants were alleged to have participated in a meeting that resulted in the plaintiff's termination but were not alleged to have personally interfered with any subsequent process). Because Plaintiffs have alleged no personal involvement of any individual Defendant in conduct that allegedly led to violation of

Plaintiff Parker's constitutional rights, Plaintiff Parker's § 1983 claims are dismissed against the individual Defendants, and the substantive discussion below concerns only the claims brought by the remaining Plaintiffs.

### 1. *Monell*

Defendants argue that Plaintiffs have failed to plausibly state a claim for municipal liability under *Monell*. (Dkt. No. 14-1, at 12–15.) Plaintiffs argue that they have stated a claim under *Monell* by alleging that "Defendants acted within the policies of the school district when they violated Plaintiffs' First Amendment rights." (Dkt. No. 19, at 6–7.)

Plaintiffs do not explicitly assert a claim for municipal liability in their complaint. (Dkt. No. 1.) Plaintiffs do, however, allege that "an employer may be vicariously liable for an employee's actions when they are acting within the scope of their employment on behalf of the employer" and assert claims under § 1983 against Defendant Sherburne-Earlville High School and Defendants Buehner, Colosi, Perry, and Berson in their official capacities, (*id.* ¶¶ 62, 65–79), which are, in effect, claims against the High School itself, *see Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012) (citing *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 691 n.55 (1978))). But "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. Because local government bodies, including public schools, are considered "municipalities" for the purposes of § 1983, *see Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 128 (2d Cir. 2004) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735–36 (1989)), § 1983 claims against Defendant Sherburne-Earlville High School and Defendants Buehner, Colosi, Perry, and Berson in their official capacities may only arise under *Monell*.

"To establish liability under *Monell*, a plaintiff must show that he suffered the denial of a constitutional right that was caused by an official municipal policy or custom." *Bellamy v. City*

*of New York*, 914 F.3d 727, 756 (2d Cir. 2019). That is, a plaintiff must show "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Outlaw v. City of Hartford*, 884 F.3d 351, 373 (2d Cir. 2018) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). A municipal policy or custom may be established where the facts show: (1) a formal policy, officially promulgated by the municipality, *see Monell*, 436 U.S. at 694; (2) action taken by the official responsible for establishing policy with respect to a particular issue, *see Pembaur v. Cincinnati,* 475 U.S. 469, 483–84 (1986); (3) unlawful practices by subordinate officials so permanent and well settled as to practically have the force of law, *see City of St. Louis v. Praprotnik*, 485 U.S. 112, 127–30 (1985); or (4) a failure to train or supervise that amounts to "deliberate indifference" to the rights of those with whom the municipality's employees interact, *see Harris*, 489 U.S. at 388; *see also Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007). Except in rare instances, a "custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality." *Newton v. City of New York*, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008); *see also Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation.").

To the extent Plaintiffs assert any respondeat superior claims arising from § 1983 causes of action, they are dismissed. *See Monell*, 436 U.S. at 691. Plaintiffs clarify that their claim is premised on *Monell* and alleged "policies of the school district." (Dkt. No. 19, at 7.) But Plaintiffs allege no "direct causal link," *see Outlaw*, 884 F.3d at 373, between any specific policy and their alleged constitutional deprivations. In fact, Plaintiffs allege that they were deprived of procedures "set[] out" in official policies, (Dkt. No. 1, ¶¶ 30–32, 84), therefore implying that acts

of individual Defendants, which Plaintiffs allege are the cause of the purported constitutional

violations at issue, were *not* in accordance with the formal policies officially promulgated by

Defendant Sherburne-Earlville High School. Plaintiffs point to no other official policies that

could lead to the contrary conclusion. Therefore, Plaintiffs have not plausibly alleged that any

official policy of Defendant Sherburne-Earlville High School was directly and causally linked to

the alleged constitutional violations.

Nor have Plaintiffs alleged that any individual Defendant was an official responsible for

establishing policy with respect to a particular issue, *see Pembaur,* 475 U.S. at 483, or that there

existed an unlawful practice of any individual Defendant so permanent and well settled as to

practically have the force of law, *see Praprotnik*, 485 U.S. at 127. And Plaintiffs plainly do not

allege any failure to train or supervise that amounts to deliberate indifference to the rights of

those with whom the municipality's employees interact, *see Harris*, 489 U.S. at 388. Instead,

Plaintiffs appear to rely on a single instance of allegedly unconstitutional conduct by individual

Defendants—that is, the suspension of Plaintiffs Potrzeba, Rood, and Furner following the

"walkout"—in arguing that "Defendants through their policies and procedures issued the

Plaintiffs unjust discipline for exercising their First Amendment rights." (Dkt. No. 19, at 7.)[5] But

a single instance is insufficient. *See Newton*, 566 F. Supp. 2d at 271.

Accordingly, Plaintiffs have failed to plausibly allege any § 1983 claims against

Defendant Sherburne-Earlville High School or Defendants Buehner, Colosi, Perry, and Berson in

their official capacities, and Defendants' motion to dismiss is therefore granted with respect to

---

[5] While Plaintiffs do allege two separate incidents resulting in suspension—the walkout and Plaintiff Parker's purported tobacco possession—Plaintiffs do not allege in the complaint that these incidents demonstrate any formal or informal policy or custom of retaliation. Nor do Plaintiffs refer to these incidents as demonstrating any formal or informal policy or custom of retaliation in their opposition to Defendants' motion to dismiss. (*Id.*)

Plaintiffs' § 1983 claims against Defendant Sherburne-Earlville High School and Defendants

Buehner, Colosi, Perry, and Berson in their official capacities.[6]

### 2.    First Amendment

Defendants argue that Plaintiffs have failed to state a claim for retaliation in violation of

the First Amendment based on the alleged "walkout" because (1) the in-school activity at issue is

not protected by the First Amendment in light of the special characteristics of the school

environment; and (2) Plaintiffs have not plausibly alleged a causal connection between the

activity at issue and their suspensions. (Dkt. No. 14-1, at 15–19.) Plaintiffs argue that their

walkout was protected by the First Amendment and that Defendants violated Plaintiffs' First

Amendment rights by disciplining Plaintiffs and threatening them with additional punishment.

(Dkt. No. 19, at 8–9.)

To state a First Amendment retaliation claim under § 1983 in the context of in-school

speech or conduct, "a plaintiff must establish that: (1) [the plaintiff's] speech or conduct was

protected by the First Amendment; (2) the defendant took an adverse action against [the

plaintiff]; and (3) there was a causal connection between this adverse action and the protected

speech." *See Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011) (citing

*Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003)).[7]

---

[6] Defendants also argue that Plaintiffs' claims must be dismissed because Plaintiffs have failed to plausibly allege that they exhausted administrative remedies. (Dkt. No. 14-1, at 23–24.) But the law Defendants cite, N.Y. Educ. Law § 3214, outlines the process due under state law for suspensions of five days or fewer, *see id.* § 3214(3)(b)(1), and more than five days, *id.* § 3214(3)(c)(1). That law does not appear to impose an exhaustion requirement. The other sources Defendants cite are also unavailing. Given that "[e]xhaustion of administrative . . . and state law remedies is not 'categorically' required before an individual may resort to federal court under § 1983," *Koehler v. New York City*, No. 04-cv-6929, 2005 WL 1123758, at *4, 2005 U.S. Dist. LEXIS 8901, at *13 (S.D.N.Y. May 11, 2005) (quoting *Patsy v. Bd. of Regents of Fla.*, 457 U.S. 496, 516 (1982)), and that failure to exhaust administrative remedies is an affirmative defense that must be raised by the defendant and that the defendant bears the initial burden of establishing, *see Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015); *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 389 (2d Cir. 2015), Defendants have not supported their position that administrative exhaustion is required.

[7] The parties do not address whether imposing ISS constitutes an adverse action in satisfaction of the second requirement, which generally requires "conduct that would deter a similarly situated individual of ordinary firmness

12

Defendants argue that Plaintiffs have not plausibly alleged the personal involvement of any individual Defendant in connection with their First Amendment retaliation claim. (Dkt. No. 14-1, at 25–27.) In opposition, Plaintiffs restate the complaint's allegations involving Defendants Buehner, Colosi, and Perry but fail to identify any allegations concerning Defendant Berson or cite any caselaw. (Dkt. No. 19, at 14.)

The only allegation of conduct on the part of any Defendant that can be construed as constituting retaliation for conduct protected by the First Amendment is Plaintiffs' allegation that "Defendant Buehner informed [Plaintiffs] that they would receive a day of [ISS] 'for what happened last week," . . . [leaving Plaintiffs] to assume that this was done in retaliation for their protest." (Dkt. No. 1, ¶¶ 24–25.) Plaintiffs' only allegation with regard to Defendant Berson is that he participated in a meeting that preceded any alleged retaliatory conduct. (*Id.* ¶ 18.) And Plaintiffs do not plausibly allege that the conduct of Defendant Colosi or Perry was retaliatory; Plaintiffs have therefore failed to plausibly alleged "a tangible connection between the acts of" Defendant Colosi, Perry, or Berson and "the injuries suffered," *see Bass*, 790 F.2d at 263. Thus, Plaintiffs have not plausibly alleged Defendants Colosi, Perry, or Berson's "personal involvement in the alleged constitutional deprivation." *See Grullon*, 720 F.3d at 138; *see also Norton*, 97 F. Supp. 3d at 256–57. Accordingly, Plaintiffs' First Amendment claims against Defendants Colosi, Perry, and Berson are dismissed.

### a.    Conduct Protected by the First Amendment

"[S]tudents do not shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *See Cox*, 654 F.3d at 272 (alteration in original) (quoting *Morse v.*

---

from exercising his or her constitutional rights," though there is "no clear definition of 'adverse action' in the school context." *See Cox*, 654 F.3d at 273. Thus, the Court limits its analyses to the first and third requirements.

*Frederick*, 551 U.S. 393, 396 (2007)). To state a claim for First Amendment retaliation under § 1983, a plaintiff must first allege that the conduct at issue was protected by the First Amendment—specifically, that the plaintiff's "action[s] constitute 'expressive conduct' entitled to protection under the First Amendment, as incorporated by the Fourteenth," and the defendant "impermissibly denie[d] . . . [the plaintiff] such protection." *See Grzywna ex rel. Doe v. Schenectady Cent. Sch. Dist.*, 489 F. Supp. 2d 139, 143 (N.D.N.Y. 2006) (third alteration in original) (quoting *Zalewska v. County of Sullivan*, 316 F.3d 314, 319 (2d Cir. 2003)). Where it is not speech but allegedly expressive conduct at issue, the plaintiff "bears the burden of demonstrating that . . . [the] conduct warrants First Amendment protection." *See id.* at 144 (citing *Church of Am. Knights of the KKK v. Kerik*, 356 F.3d 197, 205 (2d Cir. 2004)). Although Defendants do assert that there was "no protected activity," they base their argument for dismissal on the school's ability to regulate disruptive behavior. (Dkt. No. 14-1, at 15–18.) Defendants did not argue that the "quiet walkout" was insufficiently expressive to warrant First Amendment protection. Because Defendants have not raised that issue sufficiently to allow Plaintiffs to respond, the Court does not address it.

With respect to Defendants' discipline argument, it is true that "the constitutional rights of students in public school are not automatically coextensive with the rights of adults in other settings." *Id.* (quoting *Morse*, 551 U.S. at 396–97). The rights of students "must be applied 'in light of the special characteristics of the school environment.'" *Vetrano v. Miller Place Union Free Sch. Dist.*, 369 F. Supp. 3d 462, 471 (E.D.N.Y. 2019) (quoting *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969)). "As a general rule, student speech in school is protected under the First Amendment unless it would 'materially and substantially interfere with the requirements of appropriate discipline in the operation of the school.'" *Cox*, 654 F.3d at 272

(quoting *Tinker*, 393 U.S. at 509).[8] That is, "student expression may not be suppressed unless school officials reasonably conclude that it will 'materially and substantially disrupt the work and discipline of the school.'" *Morse*, 551 U.S. at 403 (quoting *Tinker*, 393 U.S. at 513). *Tinker* requires not only the potential for disruption, but also that "the concern for disruption, rather than some other, impermissible motive, was the actual reason for" the punishment imposed. *See Locurto v. Giuliani*, 447 F.3d 159, 179 (2d Cir. 2006).

Here, Plaintiffs allege that their "quiet 'walkout' . . . did not interfere with the school's operation." (Dkt. No. 1, ¶ 21.) Plaintiffs allege that they conducted the walkout "with the consent of their parents" and that "[t]he Code of Conduct of the Sherburne-Earlville Central School District sets out that 'leaving school grounds during regular school hours' is not a violation of the school's rules if done the permission of a parent." (*Id.* ¶¶ 22, 30.) From these allegations—and the rest of the facts alleged in the complaint, to which analysis is limited at this stage—the Court cannot conclude as a matter of law that Defendant Buehner could reasonably determine that Plaintiffs' conduct "materially and substantially disrupt[ed] the work and discipline of the school.'" *See Morse*, 551 U.S. at 403 (quoting *Tinker*, 393 U.S. at 513); *see also Cuff ex rel. B.C. v. Valley Cent. Sch. Dist.*, 341 F. App'x 692, 693 (2d Cir. 2009) (summary order) (vacating a judgment granting a motion to dismiss a First Amendment retaliation claim where "the particular facts pled do not compel" the conclusion that "'no reasonable jury could disagree' . . . that the student's speech 'would foreseeably create a risk of substantial disruption within the school environment.'" (quoting *Wisniewski v. Bd. of Educ. of Weedsport Cent. Sch. Dist.*, 494 F.3d 34,

---

[8] Schools may also generally regulate student speech where it is "school-sponsored" speech or where the speech is "offensively lewd and indecent." *See A.F. ex rel. Fenton v. Kings Park Cent. Sch. Dist.*, 341 F. Supp. 3d 188, 200 (E.D.N.Y. 2018) (quoting *Kramer v. N.Y.C. Bd. of Educ.*, 715 F. Supp. 2d 335, 353 (E.D.N.Y. 2010)). Such circumstances are not present here.

40 (2d Cir. 2007))).[9] Thus, construing all inferences in favor of Plaintiffs, at this early stage of

the case, the Court denies the motion to dismiss based on an argument that the walkout was

unprotected because it materially and substantially disrupted the work and discipline of the

school.

### b.   Causal Connection

Defendants also argue that Plaintiffs have not shown a causal connection between

allegedly protected activity and the adverse action. (Dkt. No. 14-1, at 19.) Plaintiffs argue that

"[a]s a result of Plaintiff[s'] walk out and their disagreement with the policies that were in place

at the school, Defendants disciplined Plaintiffs . . . and limited their educational environment."

(Dkt. No. 19, at 8.)

To plausibly allege the third requirement of a First Amendment retaliation claim—that

there was a causal connection between the adverse action and the allegedly protected conduct—

the plaintiff must allege "some evidence of retaliatory intent to cause the adverse effect." *Wang

v. Bethlehem Cent. Sch. Dist.*, No. 21-cv-1023, 2022 WL 3154142, at *21, 2022 U.S. Dist.

LEXIS 140153, at *53 (N.D.N.Y. Aug. 8, 2022) (quoting *Brandon v. Kinter*, 938 F.3d 21, 40 (2d

Cir. 2019)). In some circumstances, a plaintiff may plausibly allege a causal connection by

"showing that protected activity was close in time to the adverse action," though there is no

"bright line as to how close in time the events must be." *See Brandon*, 938 F.3d at 40 (quoting

*Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009)). Rather, the court must "exercise 'judgment

about the permissible inferences that can be drawn from temporal proximity in the context of

particular cases,'" *id.* (quoting *Espinal*, 558 F.3d at 129), and may take into account the

---

[9] Defendants argue that Plaintiffs left "class in the middle of a lesson without warning," (Dkt. No. 14-1, at 16), but that is not an inference the Court can draw from the complaint; the complaint only states that Plaintiffs Potrzeba, Rood, and Furner conducted their walkout "at approximately 11:45 a.m." (Dkt. No. 1, ¶ 20.)

sufficiency of other allegations in determining whether a plaintiff has plausibly alleged a causal connection between the conduct and the adverse action, *see Wang*, 2022 WL 3154142, at *22, 2022 U.S. Dist. LEXIS 140153, at *54–55 (considering statements allegedly made by defendants in determining whether the plaintiff sufficiently alleged a causal connection between speech and adverse action).

Here, the temporal proximity of the adverse action to the purportedly protected conduct at issue is apparent. Plaintiffs allege that their walkout occurred on Friday, November 19, 2021, and that Defendant Buehner informed them of their punishment the next school day, Monday, November 22, 2021. (Dkt. No. 1, ¶¶ 20, 23–24.) Plaintiffs allege that "Defendant Buehner informed [Plaintiffs] that they would receive a day of [ISS] for 'what happened last week[,]' . . . [leaving Plaintiffs] to assume that this was done in retaliation for their protest." (*Id.* ¶¶ 24–25.) Based on these allegations, it is plausible to infer, at this early stage, that Defendant Buehner "acted with retaliatory intent" and that there was therefore "a causal connection between the protected speech and the adverse action." *See Wang*, 2022 WL 3154142, at *22, 2022 U.S. Dist. LEXIS 140153, at *54–55.

Accordingly, Defendants' motion to dismiss is denied as to Plaintiffs' First Amendment claim against Defendant Buehner.

### 3.    Due Process

Defendants argue that Plaintiffs have failed to state a claim for violation of their Fourteenth Amendment due process rights. (Dkt. No. 14-1, at 19–23.) Specifically, Defendants argue that (1) Plaintiffs received procedural due process via informal conferences; and (2) Plaintiffs have not plausibly alleged any actions that could constitute a substantive due process violation. (*Id.*) Plaintiffs argue that they did not receive adequate notice or requisite

informal or formal hearings and that they have stated a valid substantive due process claim. (Dkt. No. 19, at 9–12.)

The Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Fourteenth Amendment's Due Process Clause contains both a procedural component and a substantive component. *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990). The procedural component applies where there is an alleged deprivation by government action of a constitutionally protected interest without sufficient procedural safeguards, such as notice and a hearing. *Id.* The substantive component "'bar[s] certain government actions regardless of the fairness of the procedures used to implement them[]' . . . [where] 'the government's exercise of power [is] without any reasonable justification in the service of a legitimate governmental objective.'" *See Hurd v. Fredenburgh*, 984 F.3d 1075, 1087 (2d Cir. 2021) (first quoting *Southerland v. City of New York*, 680 F.3d 127, 151 (2d Cir. 2012), and then quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998)).

### a.    Procedural Due Process

Defendants argue that Plaintiffs have not plausibly alleged the personal involvement of any individual Defendant in the conduct at issue, (Dkt. No. 14-1, at 25–27), and that Plaintiffs received all process that was due because "Plaintiffs' allegations set forth oral notice of the reason for the proposed action, opportunity to refuse the same, and even an appeals process," (*id.* at 21). Plaintiffs argue that they "were deprived of procedural due process when Defendants failed to provide Plaintiffs with the informal or formal processes required." (Dkt. No. 19, at 10.)

To state a claim for violation of procedural due process under § 1983, a plaintiff must plausibly allege "(1) that he [or she] possessed a protected liberty or property interest; and (2) that he [or she] was deprived of that interest without due process." *See Rehman v. State Univ. of*

*N.Y. at Stony Brook*, 596 F. Supp. 2d 643, 656 (E.D.N.Y. 2009) (citing *McMenemy v. City of Rochester*, 241 F.3d 279, 285–86 (2d Cir. 2001)); *see also Ciambriello v. County of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002).

While the "Fourteenth Amendment does not protect a public education as a substantive fundamental right," New York's Constitution and education laws "create a property interest in education protected by the Fourteenth Amendment." *Handberry v. Thompson*, 446 F.3d 335, 352–53 (2d Cir. 2006); *see also C.T. v. Valley Stream Union Free Sch. Dist.*, 201 F. Supp. 3d 307, 318 (E.D.N.Y. 2016) ("New York's Constitution and education laws provide a right to elementary and secondary education for children up to the age of eighteen."). Therefore, "a student . . . 'has a protected property interest in his education, meaning that he could not have been deprived of that right without due process of law.'" *Patrick v. Success Acad. Charter Sch., Inc.*, 354 F. Supp. 3d 185, 211 (E.D.N.Y. 2018) (quoting *Horton v. Bd. of Educ. of Sherburne-Earlville Cent. Sch. Dist.*, No. 17-cv-45, 2017 WL 1437186, at *3, 2017 U.S. Dist. LEXIS 60719, at *7 (N.D.N.Y. Apr. 21, 2017).

The Supreme Court has set forth the process due in instances of school suspensions of ten or fewer days:

> Students facing temporary suspension have interests qualifying for protection of the Due Process Clause, and due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story.

*Goss v. Lopez*, 419 U.S. 565, 581 (1975). For such suspensions, "[a] formal hearing is unnecessary." *See Rosenfeld v. Ketter*, 820 F.2d 38, 40 (2d Cir. 1987). The Supreme Court further held that "[t]here need be no delay between the time 'notice' is given and the time of the hearing." *Goss*, 419 U.S. at 582. And "as a general rule notice and hearing should precede

19

removal of the student from school," though "there are recurring situations in which prior notice and hearing cannot be insisted upon." *Id.* But overall, "the interpretation and application of the Due Process Clause are intensely practical matters and . . . '[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.'" *Id.* at 577 (second alteration in original) (quoting *Cafeteria & Rest. Workers Union, Loc. 473, AFL-CIO v. McElroy*, 367 U.S. 886, 895 (1961) ).

Furthermore, it is well-settled that, "in certain circumstances, . . . [a deprivation] will not offend the constitutional guarantee of due process[] provided there is sufficient post[-]deprivation process." *Catanzaro v. Weiden*, 188 F.3d 56, 61 (2d Cir. 1999) (citing *Parratt v. Taylor*, 451 U.S. 527, 538 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327, 330–31 (1986)). In such circumstances, where a state provides a post-deprivation remedy, that remedy constitutes due process, and no due process violation can arise. *See Parratt*, 451 U.S. at 538. In the school-suspension context in New York, this post-deprivation remedy is an Article 78 proceeding. *See Patrick*, 354 F. Supp. 3d at 210 (E.D.N.Y. 2018). However, where a plaintiff "alleges that the [d]efendant's procedural due process violations are systematic as opposed to random, the Court [may] find[] that the [p]laintiff was not required to first initiate an Article 78 proceeding before commen[c]ing [a federal court] action." *Id.* (alterations in original) (quoting *Reyes v. County of Suffolk*, 995 F. Supp. 2d 215, 228 (E.D.N.Y. 2014)).

Plaintiffs allege that on Monday, November 22, 2021, Plaintiffs Potrzeba, Rood, and Furner "were called into the main office by Ms. Tredway, the high school secretary, via loudspeaker with other students who had participated in the protest . . . [and] [o]nce in main office, Defendant Buehner informed the students that they would receive a day of [ISS] for 'what happened last week.'" (*Id.* ¶¶ 23–24.) But, Plaintiffs allege, they "were not informed of the

actual charges brought against them and were left to assume that this was done in retaliation for their protest." (*Id.* ¶ 25.) In addition, Plaintiffs allege that did not have an opportunity to present their version of facts, as required by the school's code of conduct. (*Id.* ¶¶ 31–32). The parents of Plaintiff Potrzeba were subsequently notified of the specific charges against him. (*Id.* ¶¶ 28–29.) The parents of Plaintiffs Rood and Furner then had conferences with Defendant Perry. (*Id.* ¶¶ 36, 38.) Finally, Plaintiffs Potrzeba, Rood, and Furner appealed to the Board of Education, and the Board of Education denied "all of Plaintiffs' appeals." (*Id.* ¶¶ 45–46.) Plaintiffs do not allege that they were forced to serve their suspensions before any of this process was provided. In fact, Plaintiffs do not allege that they ever served their suspensions.

As with Plaintiffs First Amendment claim, the Court first addresses Defendants' argument that Plaintiffs have not alleged the personal involvement of any Defendant in the conduct at issue. Plaintiffs allege that Defendant Buehner violated Plaintiffs' due process rights "when he did not inform the students of the charges brought against them"; Defendant Colosi violated Plaintiffs' due process rights "when he denied Edward an informal conference"; and Defendant Perry violated Plaintiffs' due process rights "when he denied Plaintiffs access to Defendant Buehner for cross-examination." Because Plaintiffs do not allege the personal involvement of Defendant Berson in any conduct at issue, Plaintiffs' due process claim against Defendant Berson is dismissed. Furthermore, given Plaintiffs' allegations that the parents of Plaintiff Potrzeba were notified of the specific charges against him, (*id.* ¶¶ 28–29); the parents of Plaintiffs Rood and Furner had conferences with Defendant Perry, (*id.* ¶¶ 36, 38); and Plaintiffs Potrzeba, Rood, and Furner appealed to the Board of Education, which denied "all of Plaintiffs' appeals," (*id.* ¶¶ 45–46), it is not clear what personal conduct by any Defendant is alleged to have violated Plaintiffs' due process rights.

But to the extent Plaintiffs have alleged the personal involvement of Defendant Buehner, Colosi, or Perry in an alleged violation of Plaintiffs' procedural due process rights, Plaintiffs claim would still fail.

Plaintiffs allege that Plaintiffs Potrzeba, Rood, and Furner were given in-school suspensions of one day. (Dkt. No. 1, ¶ 24.) Because Plaintiffs' suspensions were for fewer than ten days, the strictures of *Goss* apply. Defendants argue that the initial conversation with Defendant Buehner demonstrates that Plaintiffs received the informal notice required by *Goss*. (Dkt. No. 14-1, at 21.) Plaintiffs provide no counterargument, (Dkt. No. 19, at 9–11), and point to no caselaw that suggests that Defendant Buehner's oral notice that Plaintiffs Potrzeba, Rood, and Furner were being punished in response to "what happened last week," (Dkt. No. 1, ¶ 24), was insufficient under *Goss*. But assuming that this conversation, which Plaintiffs allege did not include the specific charges against them, (*id.* ¶ 25), was insufficient, the parents of Plaintiff Potrzeba were given written notice of specific charges of Plaintiff Potrzeba's alleged misconduct. (*Id.* ¶¶ 28–29.) The parents of Plaintiffs Rood and Furner subsequently had conferences with Defendant Perry. (*Id.* ¶¶ 36, 38.) And Plaintiffs appealed their punishments to the Board of Education. (*Id.* ¶¶ 44–46, 54.)

In light of these allegations—demonstrating the process Plaintiffs received— Plaintiffs have not plausibly alleged that the process they received was constitutionally deficient under the Fourteenth Amendment. *See Goss*, 419 U.S. 565, 581; *see also DeFabio v. E. Hampton Union Free Sch. Dist.*, 658 F. Supp. 2d 461, 490 (E.D.N.Y. 2009), *aff'd*, 623 F.3d 71 (2d Cir. 2010); *Lopez v. Bay Shore Union Free Sch. Dist.*, 668 F. Supp. 2d 406, 420 (E.D.N.Y. 2009).

Furthermore, Plaintiffs do not plausibly allege that the purported due process violations at issue were "systemic." *See Patrick*, 354 F. Supp. 3d at 210. Rather, Plaintiffs allege "isolated"

instances of alleged due process violations. *See id.* Therefore, "the availability of the procedural safeguards of an Article 78 proceeding to challenge any disciplinary decision" provides "sufficient due process to satisfy the requirements of the Fourteenth Amendment." *See Horton*, 2017 WL 1437186, at *4, 2017 U.S. Dist. LEXIS 60719, at *8–9 (quoting *Cohn v. New Paltz Sch. Dist.*, 363 F. Supp. 2d 421, 433–34 (N.D.N.Y. 2005)). And Plaintiffs do not allege, as they must, that they sought review of their punishments under Article 78. *See id.*, 2017 WL 1437186, at *5, 2017 U.S. Dist. LEXIS 60719, at *12 ("Where, as here, Article 78 gave Plaintiff a meaningful opportunity to challenge his academic suspension, he was not deprived of due process simply because he failed to avail himself of the opportunity.").

Thus, Plaintiffs have failed to state a claim for violation of their right to procedural due process, and accordingly, Plaintiffs' procedural due process claim is dismissed.

### b.      Substantive Due Process

Defendants argue that Plaintiffs have not alleged any actions so "arbitrary and capricious that they shock the contemporary conscience." (Dkt. No. 14-1, at 22.) In response, Plaintiffs state that they "have asserted a valid substantive due process claim" without providing a substantive argument. (Dkt. No. 19, at 11.)

"The first step in substantive due process analysis is to identify the constitutional right at stake." *Hurd*, 984 F.3d at 1087 (quoting *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995)). Then, the plaintiff "must demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* (quoting *Southerland*, 680 F.3d at 151–52). "The interference with the plaintiff's protected right must be so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." *Id.* (quoting *Southerland*, 680 F.3d at 152).

While Plaintiffs allege their dissatisfaction with the process they received, the imposition of the punishments, and the outcomes of the appeals, (*id.* ¶¶ 36–38, 59–60, 69, 75), Plaintiffs fail to plausibly allege any conduct sufficiently egregious to state a substantive due process claim. Plaintiffs have not plausibly alleged any action or inaction on the part of any Defendant that "may fairly be said to shock the contemporary conscience." *Hurd*, 984 F.3d at 1087 (quoting *Southerland*, 680 F.3d at 151–52). Accordingly, Plaintiffs' substantive due process claim is dismissed.

### 4.      Qualified Immunity

Defendants argue that they are entitled to qualified immunity. (Dkt. No. 14-1, at 24–25.) However, ruling on the issue of qualified immunity when presented with the limited factual record presented here at the motion to dismiss stage would be premature. *See, e.g., Chamberlain ex rel. Chamberlain v. City of White Plains*, 960 F.3d 100, 111 (2d Cir. 2020) ("[A]dvancing qualified immunity as grounds for a motion to dismiss is almost always a procedural mismatch."). Thus, the Court does not yet consider the issue.

### B.      Negligent Infliction of Emotional Distress

Defendants argue that Plaintiffs do not allege any conduct sufficiently "extreme or outrageous" to sustain a claim for negligent infliction of emotional distress. (Dkt. No. 14-1, at 28–29.) Plaintiffs argue that "extreme and outrageous" conduct is not a prerequisite for a claim of negligent infliction of emotional distress under New York law and, in any event, that they "have suffered emotional distress." (Dkt. No. 19, at 14–15.)

"To plead a negligent infliction of emotional distress claim under New York law, a plaintiff must allege (1) a breach of a duty owed to the plaintiff; (2) emotional harm; (3) a direct causal connection between the breach and the emotional harm; and (4) circumstances providing some guarantee of genuineness of the harm." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 81

(2d Cir. 2021) (footnote omitted). In general, a plaintiff may establish a claim for negligent infliction of emotional distress under the "direct duty theory," which allows a plaintiff to recover for emotional injury caused by a defendant's breach of a duty which "unreasonably endangered" the plaintiff's physical safety. *See Baker v. Dorfman*, 239 F.3d 415, 421 (2d Cir. 2000); *see also Francis*, 992 F.3d at 81 n.57.[10] Such a claim generally requires "physical injury or the threat of danger, either to the plaintiff . . . or to a close family member." *See Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 298 (S.D.N.Y. 2015) (quoting *Vaughn v. Am. Multi Cinema, Inc.*, No. 09-cv-8911, 2010 WL 3835191, at *5, 2010 U.S. Dist. LEXIS 96609, at *16 (S.D.N.Y. Sept. 13, 2010)). However, New York law "recognizes a cause of action in cases where there is 'an especial likelihood of genuine and serious mental distress, arising from . . . special circumstances, which serves as a guarantee that the claim is not spurious.'" *Baker v. Dorfman*, 239 F.3d 415, 421 (2d Cir. 2000) (quoting *Johnson v. State*, 37 N.Y.2d 378, 381–82 (1975)); *see also Brown v. N.Y. Design Ctr., Inc.*, 185 N.Y.S.3d 97, 100–01 (App. Div. 2023). Special circumstances may exist, for example, where an individual is misinformed by a medical provider that a loved one has died, where a corpse has been mishandled, or where an individual, without consent, has been videotaped using the bathroom. *See Johnson*, 37 N.Y.2d at 381–82; *Brown*, 185 N.Y.S.3d at 99; *see also J.H. v. Bratton*, 248 F. Supp. 3d 401, 416 (E.D.N.Y. 2017).

Defendants' sole argument relies on their assertion that Plaintiffs must plead "extreme or outrageous conduct" to state a claim for negligent infliction of emotional distress. (Dkt. No. 14-1, at 28–29.) But the case on which Defendants rely for that proposition involved the tort of *intentional* infliction of emotional distress, not negligent infliction of emotional distress. *See*

---

[10] A plaintiff may also establish a claim for negligent infliction of emotional distress under "the bystander theory," which is inapplicable here as it typically involves witnessing harm to a close family member. *See Baker*, 239 F.3d at 421.

*Carroll v. Bayerische Landesbank*, 150 F. Supp. 2d 531, 538 (S.D.N.Y. 2001); *see also Howell v. New York Post Co.*, 81 N.Y.2d 115, 121 (1993). Defendants have not cited authority for the proposition that an allegation of extreme or outrageous conduct is required to state a claim for negligent infliction of emotional distress; nor have Defendants responded to Plaintiffs' argument, supported by caselaw, that extreme and outrageous conduct is not an element of negligent infliction of emotional distress under New York law. (Dkt. No. 19, at 15 (citing *Brown*, 185 N.Y.S.3d 97).)

The decision of the New York Supreme Court, Appellate Division, First Department, on which Plaintiffs rely indicates that it is joining the rest of New York's appellate courts in holding that extreme and outrageous conduct is not an element of negligent infliction of emotional distress. *See Brown*, 185 N.Y.S.3d at 102 (citing *Taggart v. Costabile*, 14 N.Y.S.3d 388 (App Div. 2015), then citing *Stephanie L. v. House of the Good Shepherd*, 129 N.Y.S.3d 570 (App. Div. 2020), and then citing *Doe v. Langer*, 171 N.Y.S.3d 594 (App. Div. 2022)). *Brown* also indicates that its holding is in accord with a holding of the New York Court of Appeals. *See id.* at 102–03 (citing *Ornstein v. N.Y.C. Health & Hosps. Corp.*, 10 N.Y.3d 1 (2008)). And indeed, the most recent published Second Circuit opinion discussing the elements of a claim for negligent infliction of emotional distress under New York law does not include extreme and outrageous conduct as an element. *See Francis*, 992 F.3d at 81; *see also Rodriguez v. City of New York*, 594 F. Supp. 3d 534, 548 (E.D.N.Y. 2022) ("[T]he Second Circuit, citing [*Taggart v. Costabile*, 14 N.Y.S.3d 388, 396 (App. Div. 2015)], does not list 'extreme and outrageous conduct' as an element of the tort." (citing *Francis*, 992 F.3d at 81)).

Defendants' only argument for dismissal with regard to Plaintiffs' claim for negligent infliction of emotional distress claim is that Plaintiffs have not pleaded any extreme or

outrageous conduct, but the Court concludes that extreme and outrageous conduct is not an element of a claim for negligent infliction of emotional distress under New York law. Accordingly, Defendants' motion to dismiss Plaintiffs' claim for negligent infliction of emotional distress is denied.

### C.    Leave to Amend

In response to Defendants' motion to dismiss, Plaintiffs request leave to amend. (Dkt. No. 19, at 16.) Defendants have not opposed Plaintiffs' request.

Under Federal Rule of Civil Procedure 15(a), absent certain circumstances not at play here, a party may amend its pleading only with the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(1)–(2). Rule 15(a)(2) requires that a court "freely give leave when justice so requires." *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). But a court may, in its discretion, deny leave to amend "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023).

Here, because Plaintiffs have requested leave to amend and have not yet had an opportunity to amend, and because it is not apparent that amendment would be futile, that Plaintiffs have engaged in bad faith or undue delay, or that Defendants would be unduly prejudiced, the Court grants Plaintiffs' request for leave to amend the complaint.

## V.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion to dismiss, (Dkt. No. 14), is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED** that Plaintiff Parker's § 1983 claims are **DISMISSED**; and it is further

**ORDERED** that all § 1983 claims against Defendant Sherburne-Earlville High School and Defendants Buehner, Colosi, Perry, and Berson in their official capacities are **DISMISSED**; and it is further

**ORDERED** that Plaintiffs Potrzeba, Rood, and Furner's First Amendment claim against Defendants Colosi, Perry, and Berson is **DISMISSED**; and it is further

**ORDERED** that Plaintiffs Potrzeba, Rood, and Furner's procedural and substantive due process claims against Defendants Buehner, Colosi, Perry, and Berson are **DISMISSED**; and it is further

**ORDERED** that Plaintiffs' request for leave to amend, (Dkt. No. 19, at 16), is **GRANTED**. Plaintiffs must file any amended complaint by **January 22, 2024**.

**IT IS SO ORDERED.**

Dated: December 21, 2023
        Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge